**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| KEVIN WOOTEN,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>NETFLIX, INC., et al.,<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>1:20-cv-05166-TCB |

**DEFENDANTS' MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION TO DISMISS</u>**

TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................2

    A. Plaintiff's Novel: *Pennywise:*
    *The Hunt for Blackbeard's Treasure!* ......................................................2

    B. The *Outer Banks* Television Series ........................................................4

    C. Plaintiff's Action ....................................................................................6

LEGAL STANDARD...........................................................................................6

ARGUMENT ......................................................................................................8

    I.    The Copyright Infringement Claim Should be Dismissed
        with Prejudice. .....................................................................................8

    A. This Court May Dismiss a Copyright Infringement Claim
       for Lack of Substantial Similarity When, as Here, the Works
       Are Before It. ........................................................................................9

    B. The Works Are Not Substantially Similar in Protectable
       Expression. ..........................................................................................10

        (i)   Plot and Sequence of Events .................................................10

        (ii)  Characters ...............................................................................18

        (iii) Mood....................................................................................21

        (iv) Setting..................................................................................22

        (iv) Pace.....................................................................................23

    II.   Plaintiff's Damages Claims Should Also Be Dismissed
       with Prejudice. .....................................................................................24

CONCLUSION ...................................................................................................25

## TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................7

*Beal v. Paramount Pictures Corp.*,
    20 F.3d 454 (11th Cir. 1994) ...................................................*passim*

*Berkic v. Crichton*,
    761 F.2d 1289 (9th Cir. 1985) .............................................................12

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) .............................................................7

*Calio v. Sofa Express, Inc.*,
    368 F. Supp. 2d 1290 (M.D. Fla. 2005)...............................................25

*Cornerstone Home Builders, Inc. v. McAllister*,
    311 F. Supp. 2d 1351 (M.D. Fla. 2004)...............................................25

*Fisher v. United Feature Syndicate, Inc.*,
    203 F.3d 834, 2000 WL 135167 (10th Cir. Feb. 7, 2000)..................10

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
    462 F.3d 1072 (9th Cir. 2006) .............................................................12

*Herzog v. Castle Rock Entm't*,
    193 F.3d 1241 (11th Cir. 1999) ...............................8, 9, 10, 12, 13, 20

*Jacobsen v. Desert Book Co.*,
    287 F.3d 936 (10th Cir. 2002) ...............................................................7

*Leigh v. Warner Bros., Inc.*,
    212 F.3d 1210 (11th Cir. 2000) .........................................................8, 9

*Masterson v. Walt Disney Co.*,
    821 F. App'x 779 (9th Cir. 2020)........................................................10

*Montgomery v. Holland*,
    408 F. Supp. 3d 353 (S.D.N.Y. 2019) .................................................24

*Nelson v. PRN Prods., Inc.*,
  873 F.2d 1141 (8th Cir. 1989) ..........................................................................10

*On Davis v. The Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001) ..............................................................................25

*Oravec v. Sunny Isles Luxury Ventures, L.C.*,
  527 F.3d 1218 (11th Cir. 2008) ...........................................................................8

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ................................................................................10

*Peters v. West*,
  692 F.3d 629 (7th Cir. 2012) .............................................................................10

*Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*,
  998 F. Supp. 2d 1340 (S.D. Fla. 2014) ......................................................7, 9, 24

*Tanksley v. Daniels*,
  902 F.3d 165 (3d Cir. 2018) ..............................................................................10

*Vallejo v. Narcos Prods. LLC*,
  833 F. App'x 250 (11th Cir. 2020) ........................................................10, 21, 24

*Walker v. Time Life Films, Inc.*,
  784 F.2d 44 (2d Cir. 1986) ................................................................................12

*Wells Fargo Bank, N.A. v. Lincoln Ben. Life Co.*,
  No. 1:13-cv-2890-TWT,
  2014 WL 5382551 (N.D. Ga. Oct. 22, 2014) ...............................................24, 25

*White v. Alcon Film Fund, LLC*,
  52 F. Supp. 3d 1308 (N.D. Ga. 2014)..........................................9, 14, 18, 19, 22

*Williams v. Delray Auto Mall, Inc.*,
  289 F.R.D. 697 (S.D. Fla. 2013)........................................................................24

**Statutes**

17 U.S.C. § 301(a) ...................................................................................................25

17 U.S.C. § 412 ............................................................................................25

O.C.G.A. § 13-6-11 ......................................................................................24

O.C.G.A. § 51-12-51(b) ...............................................................................25

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ......................................................................2, 6, 7, 9

**INTRODUCTION**

Plaintiff Kevin Wooten alleges that Defendant Netflix, Inc.'s television series *Outer Banks* infringes the copyright on his novel *Pennywise: The Hunt for Blackbeard's Treasure!*.   Plaintiff claims that *Outer Banks* and *Pennywise* (collectively, the "Works") are substantially similar because both are about a group of young adults overcoming obstacles as they follow clues to a hidden treasure recovered from a fabled shipwreck.  An examination of the Works, however, reveals they have very little in common, let alone a single protectable element.

*Pennywise* is the story of Otto Burns, a creationist professor-turned-"professional treasure hunter," who, along with his middle school aged twin nephews, searches for an ancient chest containing the Holy Grail and other artifacts of Jesus Christ.  Otto aims to protect the artifacts from "Darwin," a scientist who plans to test Jesus's DNA, prove he was an ordinary man, and undermine Christianity.  *Outer Banks*, by contrast, is a melodrama that follows a group of teenagers, John B, J.J., Pope, and Kiara, who hang out largely unsupervised on the poor side of a small island in the Outer Banks of North Carolina, where there is a stark divide and classist conflict between the wealthy "Kooks" and the poor "Pogues."  After discovering a compass that belonged to John B's missing father, the teens attempt to find out what happened to him, ultimately discovering that his

disappearance was linked to his search for $400 million in gold.  The teens navigate class conflict, forbidden romance, grief, emotional and physical abuse, drugs, violence, and the bonds of friendship, as they struggle to find themselves.

Plaintiff's copyright infringement claim should be dismissed under Rule 12(b)(6) because the Works are not, as a matter of law, substantially similar in protectable expression.  Indeed, not a single protectable element in *Pennywise* appears in *Outer Banks*, and the plot, characters, mood, setting, and pace of the two Works are radically different.  Plaintiff's cherry-picked list of random "similarities" consists only of unprotectable ideas, scenes-à-faire, and blatant mischaracterizations of the Works, making clear that *Outer Banks* does not infringe his book.  His claims for punitive damages and attorney's fees also fail because neither is legally available.

No amount of repleading could change the significant differences between *Pennywise* and *Outer Banks*.  Because leave to amend would be futile, Plaintiff's Complaint should be dismissed with prejudice.

## BACKGROUND

### A.    Plaintiff's Novel:  *Pennywise: The Hunt for Blackbeard's Treasure!*

Plaintiff, a high school English teacher from North Carolina, alleges that he published *Pennywise* on May 8, 2016, registered it with the United States Copyright Office on September 10, 2020, and has sold "hundreds of" digital and physical

copies of the book.  Dkt. No. 1, Complaint ("Compl."), ¶¶ 9–10, 14–15; *id.*, Ex. A at 2.[1]  *Pennywise* follows Otto Burns, a creationist who seeks a chest containing artifacts of Jesus.  A former archaeology professor who left academia to become a professional treasure hunter after discovering a Spanish merchant ship, Otto has an annual tradition of spending a week diving for treasure in the Outer Banks with his middle school aged twin nephews, Nathan and Ben Pennywise.  Ex. 1 at 4, 7.[2]

Otto and the twins find clues quoting Biblical scripture, leading them to the chest on Piney Island.  *Id.* at 8–10, 15–16, 18, 24, 27–31, 35, 39.  Many characters attempt to thwart them:  Sheriff's Deputy Marty Stone; two armed men from the "Mystic Brotherhood"; Jechonias Horngold, who purports to be an employee of the "Division of Antiquities" for the Department of Homeland Security posing as a middle school custodian; and Charles Wellington, a supposed member of MI6.  Each is later revealed to be working for "Darwin," a scientist who wants to DNA-test Jesus's hair to prove he was an ordinary man.  *Id.* at 6, 11–12, 14, 48, 65, 84, 87.  Sheriff Alex Spotswood and his son Jack assist Otto and the twins.  *Id.* at 26, 31–32.

---

[1] On this Motion, Defendants accept the factual allegations in the Complaint, except for conclusory allegations contradicted by documents incorporated therein.

[2] Unless otherwise stated, citations to Exhibits 1 and 2 refer to the exhibits attached to the Declaration of Russell E. Blythe filed concurrently herewith.

Otto, the twins, Sheriff Spotswood, Jack, and Horngold all converge on Piney Island in the cavern containing the chest.  *Id.* at 54–57.  A scuffle ensues, during which Otto and Sheriff Spotswood each sustain non-life-threatening gunshot wounds and Horngold falls into an apparently bottomless hole.  *Id*. at 58–62.  Otto secretly manages to secure the contents of the chest before Deputy Stone and Horngold (who survived the fall) can take it to Darwin at his English estate.  *Id.* at 63–65, 67.  When Darwin learns that the artifacts are gone, he kidnaps the twins' parents, who happen to be visiting his estate.  *Id*. at 65, 67–68.  Otto travels to England where he agrees to turn over to Wellington the artifacts that can be DNA-tested in exchange for MI6's help obtaining the parents' release.  *Id*. at 83–85.  Although Wellington assures Otto his government's interests are aligned with Otto's, he promptly hands the artifacts over to Darwin.  *Id*. at 145, 148.  Otto, accompanied by a Welsh church worker, Carwen, bring the remaining objects to a museum in Jerusalem.  *Id*. at 86–87.

Written in the style of the *Hardy Boys* for preteens, *Pennywise*—like Dan Brown's novels and other pre-existing works—explores the debate between creationism and evolution.

## B.    The *Outer Banks* Television Series

Netflix released *Outer Banks* on April 15, 2020.  Compl. ¶ 16.  Consisting of

ten roughly hour-long episodes, it features a tightknit group of four racially diverse teenagers (the "Friends") on an Outer Banks island divided between the poor "Pogues" and rich "Kooks."  Ex. 2, Ep. 1 at 2:34–3:28.  John B, the narrator, was abandoned by his mother, and his father disappeared at sea.  *Id.* at 5:01–6:01.  Pope, who is Black, is the "brains of the operation," and unlike other Pogues has plans to attend college.  *Id.* at 4:20–4:56.  J.J., a "mild kleptomaniac and a future tax cheat," avoids his abusive father by staying with John B.  *Id.* at 3:31–3:50.  Kiara, whose family's restaurant makes her a Kook, hangs out only with Pogues.  *Id*. at 3:55–4:20.

After a hurricane, the Friends happen upon a sunken boat in the marsh.  *Id.* at 11:30–14:51.  The boat holds a compass that belonged to John B's missing father, which leads them to more clues meant for John B.  *See, e.g.*, *id.* at 12:55–14:32, 18:29–24:57, 47:21–50:48; Ep. 2 at 40:52–43:34; Ep. 3 at 1:53–4:02.  The Friends learn John B's father was on the verge of finding the shipwrecked *Royal Merchant*, rumored to have $400 million in gold, and decide to resume his search for the money.  *Id.*, Ep. 3 at 2:27–5:53, 39:33–43:39; Ep. 4 at 0:30–1:34, 33:09–36:19.  John B learns his father was injured and thrown overboard by wealthy developer Ward Cameron, who, along with Scooter, had been helping John B's father find the gold.  *Id.*, Ep. 8 at 6:38–14:05.  This discovery is complicated by John B's new-found love for Ward's daughter, Sarah, even though she is a Kook.  *Id.*, Ep. 4 at 42:40–45:00.

Although the Friends ultimately find the gold, Ward retrieves it and loads it onto his jet bound for the Bahamas.  *Id.*, Ep. 6 at 45:01–50:01; Ep. 8 at 37:57–38:30. Just as he is boarding, Sheriff Peterkin arrives to arrest Ward for the murder of John B's father.  *Id.*, Ep. 8 at 41:46–42:28.  Ward's son, Rafe—on drugs and desperate for his father's approval—fatally shoots Sheriff Peterkin.  *Id.* at 42:30–43:21.  Ward sends the plane to the Bahamas before framing John B for the Sheriff's murder, sparking an island-wide manhunt.  *Id.*, Ep. 9 at 2:21–3:03, 7:28–8:41, 16:52–17:31. John B and Sarah flee the island by boat and are rescued by a cargo ship fortuitously bound for the Bahamas.  *Id.*, Ep. 10 at 33:57–35:22, 38:31–39:29, 45:52–53:30.

*Outer Banks* involves numerous subplots centered on the class divide and violent rivalry between the Kooks and Pogues and coming-of-age narratives of the teenage characters.  The series, which includes drinking, drug use, violence, and other mature scenes, has a dark and edgy tone and is rated TV-MA.

## C.    Plaintiff's Action

Plaintiff sued Netflix and the show's creators on December 21, 2020.  He asserts a copyright infringement claim, and claims for attorneys' fees and punitive damages based on the alleged infringement of his novel.  Compl. ¶¶ 47–49, 51–54.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of

Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.

Courts may dismiss a copyright infringement claim for lack of similarity on a Rule 12(b)(6) motion based on a comparison of the works, which are "properly considered under the doctrine of incorporation by reference." *Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp*., 998 F.Supp.2d 1340, 1349 (S.D. Fla. 2014); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint [that] are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal."). "When a district court considers the original work and the allegedly copyrighted work in deciding a 12(b)(6) motion, . . . the legal effect of the works are determined by the works themselves rather than by allegations in the complaint." *Jacobsen v. Desert Book Co.*, 287 F.3d 936, 941–42 (10th Cir. 2002) (citation omitted).

## ARGUMENT

## I.     The Copyright Infringement Claim Should be Dismissed with Prejudice.

To state a copyright infringement claim, Plaintiff must allege: "[1] ownership of a valid copyright, and [2] copying of constituent elements of the work that are original." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994) (internal citation omitted).   Absent direct evidence of copying, a plaintiff must "demonstrate[e] that the defendants had access to the copyrighted work and that the [protectable elements of the] works are 'substantially similar.'" *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008) (quoting *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999)).[3]  To assess substantial similarity, courts ask if "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Oravec*, 527 F.3d at 1224 (citation omitted).   The defendant must have copied the plaintiff's work "to a meaningful degree" for similarities to be considered "substantial." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000).

The "substantial similarity" inquiry focuses exclusively on the similarity of

---

[3] For this Motion only, Defendants do not challenge Plaintiff's access allegations (which they deny).  Because the Works are not substantially similar, the Court can rule in Defendants' favor without reaching the question of access.

*protected* elements of the works. *Id.* And "while expression is protected, ideas are not." *Beal*, 20 F.3d at 458 (emphasis omitted). Nor are "'scènes à faire'—stock scenes that naturally flow from a common theme." *Beal*, 20 F.3d at 459 (emphasis omitted); *see also Herzog*, 193 F.3d at 1248 ("Incidents, characters, or settings that are indispensable or standard in the treatment of a given topic are not copyrightable.").

### A. This Court May Dismiss a Copyright Infringement Claim for Lack of Substantial Similarity When—as Here—the Works Are Before It.

"Eleventh Circuit case law supports a trial court's ruling based on [copyright] infringement at a motion to dismiss." *Sieger*, 998 F.Supp.2d at 1349 (granting Rule 12(b)(6) motion with prejudice based on lack of substantial similarity between the works). Substantial similarity "should be determined not with the help of or solely by experts in the relevant field, but from the perspective of the ordinary observer." *White v. Alcon Film Fund, LLC*, 52 F.Supp.3d 1308, 1324 (N.D. Ga. 2014) (internal citation and quotation marks omitted). This Court may thus compare the Works and dismiss the Plaintiff's infringement claim at the pleading stage. *Cf. id.* at 1308 (granting summary judgment for lack of substantial similarity).

Although the Eleventh Circuit has not directly addressed the dismissal of a copyright claim for lack of substantial similarity, it has repeatedly affirmed rulings

on substantial similarity at summary judgment based solely on a comparison of the works. *See Beal*, 20 F.3d at 456, 459; *Herzog*, 193 F.3d at 1262; *Vallejo v. Narcos Prods. LLC*, 833 F. App'x 250 (11th Cir. 2020). Because none of these cases relied on expert testimony or facts, the substantial similarity analysis is just as properly conducted at the dismissal stage where, as here, the works are properly before the Court. Indeed, many circuits have approved the determination of substantial similarity on a motion to dismiss. *See, e.g.*, *Tanksley v. Daniels*, 902 F.3d 165 (3d Cir. 2018); *Peters v. West*, 692 F.3d 629, 631 (7th Cir. 2012); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010); *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143 (8th Cir. 1989); *Masterson v. Walt Disney Co.*, 821 F. App'x 779, 781 (9th Cir. 2020); *Fisher v. United Feature Syndicate, Inc.*, 203 F.3d 834 (Table), 2000 WL 135167, at *3–5 (10th Cir. Feb. 7, 2000).

### B. The Works Are Not Substantially Similar in Protectable Expression.

To show substantial similarity, Plaintiff must demonstrate substantial, protectable similarities between elements such as plot, characters, mood, setting, and pace. *Beal*, 20 F.3d at 460. As to each element, *Outer Banks* is radically different from *Pennywise*, and the few actual similarities are unprotectable.

### (i) Plot and Sequence of Events

Apart from involving the unprotectable idea of searching for treasure, the two

Works' plots and sequencing of events could hardly be more different.  *See supra*, pp. 2–6.  Even Plaintiff's general depiction of the Works as focusing on "a group of young adults overcoming dangerous and challenging obstacles while following clues to a hidden treasure recovered from a fabled shipwreck" is inaccurate.  Compl. ¶ 17; *see also id.* ¶ 11.  The main "treasure hunter" in *Pennywise* is old enough to be a widowed professor who supervises his preteen nephews.  Ex. 1 at 4, 7, 82.  The *Pennywise* chest originated with Mary, Jesus's mother, and ended up with Blackbeard, who buried it off the coast of North Carolina.  *Id.* at 13.  The treasure pursued by the independent teenagers in *Outer Banks* was British gold recovered by a former slave and buried in a well.  Ex. 2, Ep. 5 at 27:22–29:31.

*Outer Banks* also contains subplots that are entirely absent from *Pennywise*, including a cross-class love triangle, *see id.*, Ep. 5 at 37:59–42:03; Sarah and John B's romance, *id.*, Ep. 7 at 24:14–31:09; Sarah's brother Rafe's drug abuse and father issues, *id.*, Ep. 6 at 24:01–27:08; J.J.'s emotional struggle with his violently abusive father, *id.*, Ep. 5 at 2:35–5:10; Pope's decision to abandon his academic merit scholarship to help his friends, *id.*, Ep. 8 at 31:47–34:37; and Kiara's internal class conflict, mended friendship with Sarah, and eventual romance with Pope, *id.*, Ep. 1 at 3:55–4:20; Ep. 6 at 27:11–34:29; Ep. 10 at 37:17–38:03.  *See Beal*, 20 F.3d at 461 (refusing to disregard a second plotline in one of the works, noting that "the existence

of the second plot is relevant because it greatly influences the mood of the book").

Courts have found plots with far more similarities to be dissimilar as a matter of law.  *See, e.g.*, *id.* at 460 (no substantial similarity between works with "young crown princes from wealthy royal families coming to America, where they meet the women they will marry" and "a strong ruler who . . . initially prefers that the prince enter into an arranged marriage"); *Herzog*, 193 F.3d at 1258–59 (no substantial similarity between works involving a "murder investigation which reveals the corrupt past of a small town," sheriffs who "engaged in murder" and "were killed by their deputies" and protagonists who are "law enforcement officers whose fathers were sheriffs"); *Funky Films, Inc. v. Time Warner Entm't Co., L.P.,* 462 F.3d 1072, 1081 (9th Cir. 2006) (no substantial similarity between works where fathers who operate family-run funeral homes die, resulting in operation of the homes by two sons, one of whom has been estranged prior to the father's death); *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) (no substantial similarity between works about "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants" and the "adventures of a young professional who courageously investigates, and finally exposes, the criminal organization"); *Walker v. Time Life Films, Inc.*, 784 F.2d 44 (2d Cir. 1986) (no substantial similarity between book "Fort Apache" and film "Fort Apache: The

Bronx," where both works involved policemen in hostile environment of 41st Precinct and featured the murder of black and white policemen with handguns at close range, cockfights, drunks, stripped cars, prostitutes, rats, third- or fourth-generation Irish policemen and several foot chases).

To distract from the Works' patently dissimilar plots, Plaintiff cherry-picks an out-of-order list of "similarities." Compl., Ex. C. But such "lists are inherently subjective and unreliable, particularly where the list contains random similarities" that "could be found in very dissimilar works." *Beal*, 20 F.3d at 460 (citations omitted). None of the alleged similarities supports a finding of substantial similarity.

***Pocket Watch v. Compass.*** Plaintiff compares the discovery of Blackbeard's pocket watch in *Pennywise* to the discovery of John B's father's compass in *Outer Banks*. Compl., Ex. C at 3.1–3.5. Discovery of clues, however, "naturally flow[s] from [the] common theme" of a treasure hunt. *Beal*, 20 F.3d at 459; *see also Herzog*, 193 F.3d at 1262 ("death due to foul play instead of natural causes" is unprotectable stock scene in a murder mystery). The Works' expression of this stock element is also starkly different. Nathan finds Blackbeard's watch, containing a Bible verse, while treasure-hunting. Ex. 1 at 9. John B finds the compass on a sunken boat accidentally, and recognizes the compass as belonging to his father and containing

13

a personalized message.[4]  Ex. 2, Ep. 1 at 47:21-50:48; Ep. 2 at 12:50–14:18.

Nor is Otto giving Blackbeard's pocket watch to Deputy Stone comparable to John B's relinquishing the compass to Sheriff Peterkin.  Compl., Ex. C at 3.4.  Not only is turning over a clue to law enforcement unprotectable, but it is also expressed differently.  Otto voluntarily turns over the pocket watch because he trusts law enforcement, Ex. 1 at 16, while John B—who has a strong distrust for authority—reluctantly turns over the compass to avoid foster care, Ex. 2, Ep. 2 at 36:06–37:16.

*Mausoleum*.  Plaintiff claims that Otto and the twins' trip to Governor Eden's mausoleum in *Pennywise* is similar to the Friends' discovery of a FedEx envelope inside John B's ancestor's tomb in *Outer Banks*.  Compl., Ex. C at 4.1-4.4.  But a graveyard or mausoleum in a treasure hunting story is precisely the kind of stock scene that is not protected.  *See Beal*, 20 F.3d at 463 ("[T]he idea of a mosque-style palace with minarets is a scène à faire in a story about Arabian or African royalty.").[5]

---

[4] The images of Governor Eden with the pocket watch are not comparable to the photographs of John B's relatives with the compass.  Compl., Ex. C at 3.5.  Governor Eden's portrait in the AME Zion Church leads Otto and the twins to investigate his grave, where they find another critical clue.  Ex. 1 at 18–19, 25, 27, 29–30.  The photographs in *Outer Banks* merely show that the compass is a family heirloom; they play no role in the Friends' search for the gold.  Ex. 2, Ep. 2 at 11:59–14:18.

[5] Such scenes appear in countless works, including *Raiders of the Lost Ark* (1981), *Lara Croft: Tomb Raider* (2001), *The Da Vinci Code* (2003), *National Treasure* (2004), and *Harry Potter and the Deathly Hallows* (2007).  *See White*, 52 F.Supp.

The mausoleum and tomb also play different roles:  the reference to "wings" in the mausoleum leads Otto and the twins to an eagle statue with another Biblical clue, Ex. 1 at 30, while "For Bird" on the envelope found in John B's ancestor's tomb refers to his nickname—making clear that his father intended him to find it.  Ex. 2, Ep. 3 at 0:17-1:147, 1:52–4:04.

Nor are the graveyard chase scenes alike.  Compl., Ex. C at 4.4.  Unlike the Mystic Brotherhood in *Pennywise*, the men the Friends flee in *Outer Banks* are not treasure hunters but workers who turn out to pose no threat.  Ex. 2, Ep. 3 at 0:17–1:47.  And in *Pennywise*, the caretaker (a peripheral character), loses his jacket when he is grabbed by his pursuer.  Ex. 1 at 31.  In *Outer Banks*, Pope's pants are caught on a gate, leaving him in his underwear, for comic relief.  Ex. 2, Ep. 3 at 0:17–1:47.

***Churches***.  Plaintiff claims that in both Works the "protagonists visit an old wooden church, twice."  Compl., Ex. C at 5.1.  This comparison is based on blatant mischaracterizations.  Plaintiff compares the church in *Pennywise* to Ms. Crain's Victorian *house* in *Outer Banks*,[6] Compl., Ex. C at 5.2, 5.3, and compares Darwin's

---

3d at 1326 (disregarding those "purported similarities that . . . could be identified in numerous independent, and very dissimilar works").

[6] Even if both were churches, they serve different roles: in *Pennywise*, the church is the site of two clues that ultimately lead to the discovery of Blackbeard's chest in Piney Island, Ex. 1 at 18, 30, 58–60.  Whereas Ms. Crain's home turns out to be the actual hiding place of the treasure in *Outer Banks*, Ex. 2, Ep. 6 at 44:16–50:03.

*estate* in *Pennywise* to the old, abandoned church where John B and Sarah seek refuge from the authorities in *Outer Banks*,[7] *id.* at 5.4, 5.5.  This argument also relies on a stock location that is scenes-à-faire of a treasure hunt story, including in *The Da Vinci Code* and *National Treasure*.  *See Beal*, 20 F.3d at 463.

***Retrieval of the Treasure***.  Not only does retrieving treasure flow naturally from treasure hunt stories, but—contrary to Plaintiff's claim*, see* Compl., Ex. C at 7.1–7.2—the Works' expression of this stock scene is completely different.  In *Pennywise*, Horngold and/or Deputy Stone retrieve Blackbeard's chest after the protagonists leave to treat minor gunshot wounds, but it is later revealed that Otto had already removed the contents.  Ex. 1 at 61–64, 67.  In *Outer Banks*, the Friends flee Mrs. Crain's property leaving all but one bar of gold when she shoots at them, and Ward purchases the property and engages construction workers to excavate the gold.  Ex. 2, Ep. 6 at 44:16–50:03, Ep. 8 at 22:17–23:02, 27:00–27:59.

The exportation of the treasure is also different.  Otto, motivated by duty to family and religious beliefs, takes the treasure abroad to exchange some artifacts for Mr. and Mrs. Pennywise's release and donate others to an Israeli museum.  Ex. 1 at

---

[7] Nor do they involve similar scenes of smoke.  Compl., Ex. C at 5.4.  The parents intentionally smoke themselves out in Darwin's estate to escape their kidnappers.  Ex. 1 at 70–71.  In contrast, Sarah and John B hide in the church from the authorities until forced to flee when Rafe sets it on fire.  Ex. 2, Ep. 9 at 43:15–47:17.

86–87. Ward, by contrast, smuggles the gold to the Bahamas for his own gain. Ex. 2, Ep. 8 at 37:21–43:20. *See Beal*, 20 F.3d at 460–61 (no substantial similarity between works featuring travel to America, but for different purposes).

***Additional Alleged Similarities***. Plaintiff identifies other random alleged similarities, which are all noncopyrightable ideas and scenes-à-faire of a treasure hunt—*e.g.*, treasure in a "shaft"; boats capsizing; and treasure hunters following clues, receiving ominous warnings, discovering skulls, viewing historical portraits, engaging in car chases, using the internet for research, being "fond" of maps, and encountering "mysterious dangerous men." *See* Compl., Ex. C, 3.3, 5.2, 6.1–6.6, 9.1–9.8. Such unprotectable elements appear in many works, including *Goonies*, *Raiders of the Lost Ark*, and *Pirates of the Caribbean.* The expression of these stock elements is also entirely different.[8] Because Plaintiff's claimed similarities "either

---

[8] The two "shafts" are dissimilar:  the *Pennywise* chest is in a cave on uninhabited Piney Island, Ex. 1 at 39, 58–60; the *Outer Banks* gold is in a well under Mrs. Crain's home, Ex. 2, Ep. 6 at 44:16–50:03. The capsized boat in *Pennywise* carries Sheriff Spotswood and Jack, who swim to Piney Island where they later find the treasure, Ex. 1 at 37, 39, 58–60, whereas the capsized boat in *Outer Banks* carries John B and Sarah as they flee the authorities after Ward secures the treasure. Ex. 2, Ep. 10 at 33:57–35:22, 38:31–39:29. Otto and the twins heed the anonymous warning notes in *Pennywise*, leading them to Orcacoke, where they find Blackbeard's pocket watch, Ex. 1 at 8–10, whereas, in *Outer Banks*, the Friends disregard Sheriff Perterkin's verbal warning to avoid the marsh, returning to the sunken boat. Ex. 2, Ep. 1 at 37:50–39:20, 42:28–48:15. The "mysterious dangerous men" in *Pennywise*

fail to materialize altogether or they pertain to non-protectable expressions," they cannot establish substantial similarity. *See White*, 52 F.Supp.3d at 1324.

### (ii)    Characters

*Pennywise* focuses on a middle-aged man and his (fairly indistinguishable) young twin nephews, whereas *Outer Banks* is about an ensemble of teenage friends who have strikingly different personalities and undergo significant character development. Plaintiff's attempts to draw parallels between the characters in the face of these differences are at best misleading and at worst absurd.

***The Twins and the Friends.*** Plaintiff compares the twins ("identical twins whose parents are notably absent)" to John B and J.J. ("who lead nearly identical lives and whose parents are notably absent"). Compl., Ex. C at 2.1. But the twin's parents are "absent" only because they are vacationing, Ex. 1 at 8, 65–66, whereas John B's mother left him, his father disappeared, and his legal guardian is gone. Ex. 2, Ep. 1 at 5:01–6:01. J.J.—who is not related to John B—has an alcoholic, abusive father. *Id.*, Ep. 5 at 2:35–5:10. Even if Plaintiff's characterization were accurate (it is not), it would not be protectable. *See White*, 52 F.Supp.3d at 1319–23, 1329 (no

---

work for the Mystic Brotherhood, Ex. 1 at 14, whereas the two men in *Outer Banks* are not known to work for anyone and are murdered by Ward. Ex. 2, Ep. 3 at 28: 11–29:03; Ep. 4 at 13:53–15:19; 45:10–45:49; Ep. 10 at 5:21–7:07. Finally, the skull in *Outer Banks* is part of a subplot (Mrs. Crain's fabled axe-murder of her husband) that has no counterpart in *Pennywise*. Ex. 2, Ep. 6 at 4:18–5:11, 7:30–9:12.

substantial similarity where protagonists were "young African-American males living in public housing projects with a single female parent figure").

In fact, the *Pennywise* twins differ significantly from the teens in *Outer Banks*, particularly in their naivety and reliance on adults for guidance and protection. *Compare, e.g.*, Ex. 2, Ep. 1 at 0:17–5:46, 31:26–35:05 (Friends drive own boat and car, and spend the night alone in John B's house after drinking and using drugs), *with* Ex. 1 at 4, 9 (twins look to Otto for direction) and 7–8 (Otto asks twins' parents' permission to take them on the boat trip). *See White*, 52 F.Supp.3d at 1320–21 (no substantial similarity between a character who is "naïve, gentle and inexperienced" and "does not use drugs or alcohol" and a character who "demonstrates a hardened familiarity with the more troubling sides of the projects, dealing drugs, drinking with his best friend and carrying a gun," and engaging in sexual episodes).

***Otto and Pope.*** Plaintiff claims Otto and Pope are "studious, skeptical, and throw[] away [their] shot[s] at academia." Compl., Ex. C at 2.5. Otto, however, is a former professor who left academia to become a treasure hunter. Ex. 1 at 7. Pope is a high-schooler who dreams of attending college but walks out of a scholarship interview to help his friends. Ex. 2, Ep. 1 at 4:20–4:56; Ep. 8 at 31:47–34:37.

***Skipper and Kiara***. Plaintiff compares Kiara to the twins' family dog, Skipper, whom Plaintiff inaccurately characterizes as the "fourth group member" in

*Pennywise*.  Compl., Ex. C at 2.4, 2.6.  Notwithstanding that Skipper is a "4-year old chocolate lab" and Kiara is a bright and capable human teenager with complex emotions, Plaintiff utilizes problematic gender stereotypes in attempting to draw a parallel between the two by describing the dog as exhibiting "both masculine (male dog) and feminine ('as protective as a mother') characteristics" and Kiara as exhibiting "both feminine (female identity) and masculine (tomboy) characteristics." *Id.* at 2.6.  Plaintiff's (offensive) effort to compare a pet to a complex central character highlights his inability to identify comparable characters.

**Mr. and Mrs. Pennywise and John B's Father**.  Plaintiff falsely claims that the twins' parents and John B's father were or "may" have been kidnapped.  Compl., Ex. C at 2.2.  John B's father was not kidnapped; he was hit in the head after being shoved by Ward, thrown overboard, and stranded.  Ex. 2, Ep. 8 at 6:38–14:05.

**Darwin and Ward.**  Plaintiff claims Darwin and Ward are "rich benefactor[s]" seeking treasure.  Compl., Ex. C at 2.7.  Apart from the unprotectable characteristic of being wealthy, the two are not remotely similar.  Darwin wants to use the treasure to prove Jesus was an ordinary man.  Ex. 1 at 65–66.  Ward is a ruthless, murderous developer who seeks more wealth.  Ex. 2, Ep. 8 at 37:57–38:30; Ep. 10 at 5:25–7:37.

**Deputy Stone and Sheriff Peterkin**.  Plaintiff claims both officers are "corrupt," Compl., Ex. C at 3.4, which is by no means protectable.  *See Herzog*, 193

F.3d at 1261 ("'Crooked law enforcement officers brought to justice by their peers'
is a basic, unprotectible police story convention."). He is also wrong: Deputy Stone
secretly works for Darwin, Ex. 1 at 65, while Sheriff Peterkin dutifully investigates
the disappearance of John B's father and attempts to arrest Ward for his murder
before being killed in the line of duty. Ex. 2, Ep. 8 at 36:02–37:00, 41:46–42:28.

That both Works include numerous characters with no counterpart in the other
further demonstrates the lack of substantial similarity. *See Vallejo*, 833 F. App'x at
259–60 (no substantial similarity between memoir and *Narcos* series where "Ms.
Vallejo's counterpart character in *Narcos*, Ms. Velez, is not even present in the
*Narcos* scene" which instead "introduces a new female character who did not appear
in the memoir"). *Pennywise* features Horngold, Wellington, Jack, Aunt Jenny,
Carwen, and a helpful cemetery caretaker, Ex. 1 at 11–12, 26, 28, 47, 81–82—none
of whom has a counterpart in *Outer Banks*. *Outer Banks* features various Kooks,
*e.g.*, Ex. 2, Ep. 4 at 42:40–45:00; each of the Friends' parents, *id.*, Ep. 1 at 3:45–
4:50, Ep. 2 at 12:50–14:18, Ep. 5 at 37:59–42:03; Barry, a drug dealer entangled
with Rafe and the Friends; Mrs. Cain, *id.*, Ep. 6 at 4:18–5:11; and Scooter's widow,
who reveals the truth about John B's father's death, *id.*, Ep. 8 at 6:38–14:05.

### (iii)   Mood

Plaintiff claims no similarity of mood. *Pennywise* is a lighthearted adventure

appropriate for preteens.  It involves no sex or drugs, and any violence is non-fatal and the discussion of it cursory.  *See, e.g.,* Ex. 1 at 61–63.  *Outer Banks* is much darker, and involves teen relationships, drug use, poverty, and violence, including murder.  *See, e.g.,* Ex. 2, Ep. 5 at 2:35–5:10; *see also White*, 52 F.Supp.3d at 1320 (works had "strikingly different moods" because one is "dark and dramatic, and features such heavy topics as poverty, violence, drugs, infidelity . . . and murder," while the other "is a light 'feel-good' comedy").  Indeed, the violence in *Outer Banks* is portrayed in graphic detail.[9]  *See Beal*, 20 F.3d at 461 (no substantial similarity where plaintiff's work "includes several episodes of political violence, while [defendant's] movie features only a foiled robbery attempt with something of a humorous slant"); *White*, 52 F.Supp.3d at 1319 (in contrast to the plaintiff's book, the defendant's film had "no physical abuse, no rape or murder" and the "violent scenes are by and large fist-fights and brawls involving no gunshots and no death").

### (iv)   Setting

Plaintiff alleges the Works are both set "in the outer banks of North Carolina."

---

[9] The Friends are bloodied in a series of fistfights (including a scene in which two Kooks beat Pope with a golf club at their country club), Ex. 2, Ep. 3 at 33:52–34:58; John B is nearly drowned by a Kook, *id*., Ep. 1 at 32:44–34:39; J.J. frequently brandishes and fires a gun, *e.g.*, *id*.; J.J.'s father punches him repeatedly, *id*., Ep. 5 at 2:35–5:10; and Rafe fatally shoots Sheriff Peterkin, *id*., Ep. 8 at 42:30–43:21.

Compl. ¶ 23 & Ex. C. 1.1.  But *Pennywise* spans multiple continents:  Otto begins in North Carolina, goes to the United Kingdom to rescue the twins' parents, then takes the artifacts to Israel.  *Id.* at 4–7, 73–74, 86–87.  As for the North Carolina settings, other than the discovery of the pocket watch off Ocracoke, none of *Pennywise* takes place in the Outer Banks.  The twins live in Beaufort and many of the clues are in Bath (both mainland towns), and the treasure is on Piney Island (not in the Outer Banks).  *Id.* at 4, 17–18, 58–60.  In contrast, *Outer Banks* takes place exclusively on one small Outer Banks island, except for a single trip to nearby Chapel Hill.[10]  *See* Ex. 2, Ep. 4 at 23:03–27:38, 31:20–36:20.

### (v)   Pace

Plaintiff makes no attempt to claim similarity of pace.  Nor could he: *Pennywise* takes place over a single week, Ex. 1 at 86, while *Outer Banks* develops over a summer, Ex. 2, Ep. 1–10.  *See Beal*, 20 F.3d at 463 (no substantial similarity between works spanning nine months and forty days).  *Outer Banks'* scenes are also more fully developed, whereas *Pennywise* jumps quickly between scenes with short sentences of dialogue.  Even if both could be considered fast-paced, that is typical

---

[10] *Outer Banks*' setting also drives the class conflict between the Kooks, who live in "Figure Eight," and the Pogues, who live in "The Cut."  Ex. 2, Ep. 1 at 2:34–3:28. *Pennywise*'s setting does not give rise to any class-conflict theme whatsoever.

of the action-adventure genre, and that two works "are relatively quick in pace . . . is not sufficient to weigh heavily in [plaintiff's] favor." *Beal*, 20 F.3d at 463.[11]

Because *Outer Banks* is not substantially similar in protectable expression to *Pennywise* as a matter of law, Plaintiff cannot state a copyright infringement claim. Because nothing he could allege could cure the lack of substantial similarity, his infringement claim should be dismissed with prejudice. *See Sieger*, 998 F.Supp.2d at 1343; *Montgomery v. Holland*, 408 F.Supp.3d 353, 358, 379 (S.D.N.Y. 2019).

## II.   Plaintiff's Damages Claims Should Also Be Dismissed with Prejudice.

Plaintiff's claims for attorneys' fees and punitive damages should also be dismissed because there is no basis for such damages under state or federal law. *See Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699–700 (S.D. Fla. 2013). The Georgia statute authorizing the recovery of attorneys' fees, O.C.G.A. § 13-6-11, would apply only if *Georgia* law applied to the underlying cause of action—which

---

[11] Regarding dialogue, there is no similarity between Otto expressing skepticism that the men who boarded his boat were "some kind of threat to national security," and John B telling Sarah "[i]t's a matter of national security" as part of their flirtatious role play. Compl., Ex. C at 8.1; Ex. 1 at 12; Ex. 2, Ep. 4 at 11:17–11:54. As to the allegedly similar "sleepwalk" lines, *see id.* at 8.2, Ben suggests telling Aunt Jenny that he sleepwalks if he is caught sneaking out, Ex. 1 at 52, whereas Sarah flirtatiously suggests sleepwalking into John B's room, Ex. 2, Ep. 6 at 1:08–1:43. In any event, "[w]ords and short phrases" are not subject to copyright protection. *Vallejo*, 833 F. App'x at 259 n.3.

it does not.  *See Wells Fargo Bank, N.A. v. Lincoln Ben. Life Co.*, No. 1:13-cv-2890-TWT, 2014 WL 5382551, at *2 (N.D. Ga. Oct. 22, 2014).  And the Copyright Act expressly prohibits fee awards when the allegedly infringed work was not registered at the time of the alleged infringement.  17 U.S.C. § 412; *see also Cornerstone Home Builders, Inc. v. McAllister*, 311 F.Supp.2d 1351, 1352 (M.D. Fla. 2004).  *Outer Banks* was released on April 15, 2020, but Plaintiff's registration was not effective until September 2020.  *See* Compl. ¶¶ 10, 16; *id.*, Ex. A at 2.

Plaintiff claims punitive damages under Georgia Code § 51-12-51(b), Compl. ¶ 49, but that section applies only to "tort actions."  *See* O.C.G.A. § 51-12-51(b).  Because Plaintiff does not assert tort claims, his request under Georgia law is baseless.  *Cf. Wells Fargo Bank,* 2014 WL 5382551, at *2.  In any event, such a state- or common-law tort claim for damages arising out of copyright infringement is preempted by the Copyright Act, under which punitive damages are not available.  *See* 17 U.S.C. § 301(a); *Calio v. Sofa Express, Inc.*, 368 F.Supp.2d 1290, 1291 (M.D. Fla. 2005); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 172 (2d Cir. 2001).

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety and with prejudice.

Respectfully submitted this 1st day of March, 2021.

KING & SPALDING LLP

*/s/ Russell E. Blythe*
Russell E. Blythe
   Georgia Bar No. 141379
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
rblythe@kslaw.com

Kelly Perigoe
   *Pro Hac Vice To Be Filed*
Arwen Johnson
   *Pro Hac Vice To Be Filed*
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 613-4770
kperigoe@kslaw.com
arwen.johnson@kslaw.com

*Counsel for Defendants*
*Netflix, Inc., Daniel S. Burke,*
*Jonas J. Pate, and Joshua W. Pate*

26

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia, that the foregoing complies with the font and point selections approved by the Court in L.R. 5.1B. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

_/s/ Russell E. Blythe_
Russell E. Blythe
 Ga. Bar No. 14137

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March, 2021 I arranged for service of

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO

DISMISS via the Court's CM/ECF system to the following attorneys of record for

Plaintiff.

> Marcy L. Sperry
> Melissa F. Castro
> Sperry IP Law d/b/a/ Vivid IP
> 3017 Bolling Way, NE
> Atlanta, Georgia 30305
> (404) 474-1600
> marcy@vividip.com
> melissa@vividip.com


> _/s/ Russell E. Blythe_
> Russell E. Blythe
>   Ga. Bar No. 14137